IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHELBY ROSS, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) No. 2:24-cv-02313-SHL-cgc |
| TIPTON COUNTY, TENNESSEE, and JEREMY FINNEY, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING THE JOINT MOTION TO STAY**

Defendants Tipton County, Tennessee, and Jeremy Finney filed their Motion for Summary Judgment on July 18, 2025. (ECF No. 32.) Defendants argue that Finney is entitled to summary judgment based on qualified immunity, and that Ross abandoned her claims against Tipton County, supporting summary judgment in its favor. (Id. at PageID 533–34.) Plaintiff responded on August 22. (ECF No. 43.) Defendants replied on September 4. (ECF No. 46.)

For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. In addition, given the Court's ruling here and the anticipated rulings on the other pending motion, the Joint Motion to Stay Remaining Pretrial Deadlines and to Continue Trial Setting (ECF No. 50) is **DENIED**.

**BACKGROUND[1]**

On May 11, 2023, Tipton County Sheriff's Officers Brandon Shelton and Jeremy Finney canvassed the neighborhood in which Ross lived with her boyfriend, Justin Tarrance, after a

---

[1] Unless otherwise stated, the following facts are undisputed.

series of vehicle break-ins and gun thefts in the area. (ECF Nos. 32-1 ¶¶ 1, 3; 43-1 ¶ 1, 3.) The officers were aware that, two days earlier, a hooded figure had been spotted on home video surveillance peering into car windows while wearing a single-strap backpack. (ECF Nos. 32-1 ¶ 2; 43-1 ¶ 2.) They also knew that an unknown person had fired a weapon during a burglary two days before. (ECF Nos. 32-1 ¶ 4; 43-1 ¶ 4.)

While Shelton was interviewing neighborhood residents about the break-ins, Ross and Terrance walked out of their nearby home, and neighbors promptly pointed out the couple to Shelton. (ECF No. 43-1 ¶ 11.) Their exact comment is disputed, but, according to Ross, the neighbors said that "if there was something going on in the neighborhood, especially with drugs, [Ross] and Mr. Tarrance would know or have something to do with it." (Id.) Shelton thought Tarrance resembled the burglary suspect captured on the video. (ECF Nos. 32-1 ¶ 12; 43-1 ¶ 12.) When Ross and Tarrance drove away, Shelton followed them, at the same time calling Finney for backup. (ECF No. 32-1 ¶¶ 13–14; ECF No. 43-1 ¶¶ 13–14.) Shortly thereafter, Shelton pulled the couple's vehicle over, briefly spoke to them, and "ran" their driver's licenses. (ECF Nos. 32-1 ¶¶ 17–18; 43-1 ¶¶ 17–18.)

Arriving at the scene after the stop, Finney first spoke with Shelton, who explained the reasons for the stop—including that a neighbor had told Shelton that the couple would be involved in or know something about drugs, and, once stopped, that Shelton smelled marijuana coming from their car. (ECF Nos. 32-1 ¶¶ 24–25; 43-1 ¶ 24.) Ross, however, disputes that anyone smelled marijuana. (ECF No. 43-1 ¶ 25.) Finney then approached the couple's vehicle. (ECF Nos. 32-1 ¶ 27; 43-1 ¶ 27.) He observed a single-strap backpack inside. (ECF Nos. 32-1 ¶ 30; 43-1 ¶ 30.) Because the suspect in the break-ins had also worn a single-strap backpack during one of the break-ins and because the suspect had stolen guns from vehicles, "Finney

2

believed there could be a gun in the vehicle or in the bag." (ECF Nos. 32-1 ¶ 31; 43-1 ¶ 31.) He advised the couple that "the officers were investigating burglaries and thought they looked suspicious." (ECF No. 43-1 ¶ 33.)

Defendants contend that "Finney smelled marijuana emanating from [Ross's] vehicle," which Ross disputes "because she had not used marijuana in years." (ECF Nos. 32-1 ¶ 29; 43-1 ¶ 29.) Ross later conceded, however, that she and Tarrance smoked CBD, had used CBD in her car, and had used CBD during the timeframe of—although not immediately preceding—the stop. (ECF Nos. 32-1 ¶¶ 70–71; 43-1 ¶¶ 70–71;32-4 at PageID 157:25–158:1.) At the time of the stop, Finney asked whether the couple had been smoking weed, after which Ross hesitated before saying "no." (ECF Nos. 32-1 ¶ 41; 43-1 ¶ 41.) Finney told them that he smelled weed coming from their vehicle, and that he had probable cause to search it. (ECF Nos. 32-1 ¶¶ 42–43; 43-1 ¶¶ 42–43.)

Opening Ross's door, Finney instructed her to step out of the vehicle, but she did not. (ECF Nos. 32-1 ¶¶ 45, 47; 43-1 ¶¶ 45, 47.) He warned her that she would be taken into custody if she did not step out of the car. (ECF Nos. 32-1 ¶ 48; 43-1 ¶ 48.) He repeated the command a total of six times over twenty-three seconds. (ECF Nos. 32-1 ¶ 49; 43-1 ¶ 49; 43-2 ¶ 10; 46 at PageID 532.) As he reached into the car to remove her, Ross raised her legs and placed them against the dashboard in what Defendants describe as an attempt "to brace herself from being removed" but what Ross calls a "reflex." (ECF Nos. 32-1 ¶ 54; 43-1 ¶ 54.) Finney reached into the vehicle to take hold of Ross's wrist, but Ross pulled away from him. (ECF Nos. 32-1 ¶ 57; 43-1 ¶ 57.) Finney then reached over Ross to unbuckle her seatbelt and removed her from the vehicle as she pushed her legs upward against the steering wheel. (ECF Nos. 32-1 ¶¶ 52, 58; 43-

3

1 ¶¶ 52, 58.) Throughout the time that Ross was refusing to exit the car and reacting to Finney's attempt to remove her, Ross was also screaming at him.

As Finney pulled Ross out of the car, they both "went to the ground"; Ross further asserts, and Defendants dispute, that "[h]e slammed her" and then "placed his knee into her back" and "press[ed] [her] into the asphalt." (ECF Nos. 32-1 ¶ 59; 43-1 ¶¶ 59, 61.) Ross concedes, however, that Finney did not place his full weight on her.[2] (ECF Nos. 32-1 ¶ 61; 43-1 ¶ 61.) Finney placed Ross's hands behind her back. (ECF No. 32-1 ¶ 62.) As a result of the encounter, Ross received bruises and cuts, in addition to, according to Ross, "psychological trauma and anxiety." (ECF Nos. 32-1 ¶ 64; 43-1 ¶ 64.)

After more officers arrived, and while Ross and Tarrance were standing handcuffed in front of their car, the officers searched Ross's vehicle, finding only a CBD honey stick, according to Defendants, or an empty CBD honey stick wrapper, according to Ross. (ECF Nos. 32-1 ¶¶ 67, 69; 43-1 ¶¶ 67, 69.) Afterward, the couple was released, and Ross was not charged with any crime. (ECF No. 32-1 ¶ 81; 43-1 ¶ 81.)

At her deposition, Ross explained that both she and Tarrance do smoke CBD products, and that they "have, on rare[] occasion, used CBD products in her car," although "not in the days leading up to or on May 11, 2023." (ECF Nos. 32-1 ¶¶ 70–71; 43-1 ¶¶ 70–71.) Her father had also used CBD products in her car, specifically CBD honey sticks, according to Ross. (ECF No. 32-1 ¶ 72; 43-1 ¶ 72.) But, in any case, her father had not used CBD any later than three days

---

[2] Here, as elsewhere, Ross attempts to gainsay her deposition testimony. In her response to Defendants' statement of undisputed material facts, Ross "disputes that Finney did not put his weight on her" because she "testified at her deposition that he placed his knee into her back, then straddled her and 'press[ed] [her] into the asphalt.'" (ECF No. 43-1 ¶ 61.) However, in her deposition Ross stated, "I could feel him on []top of me, but he wasn't sitting on me, no." (ECF No. 32-4 at PageID 167:15–16.)

4

before the day of the stop, for he passed away two days before these events.  (ECF No. 32-1 ¶ 72; 43-1 ¶ 72.)   She further testified that CBD "could" smell like marijuana, and that—although the odors are not identical—she "could see where one may be confused."[3]  (ECF No. 43-1 ¶ 75.)

Ross sues Finney, alleging Fourth Amendment violations based on an illegal search and seizure, in addition to state law assault and battery.  (ECF Nos. 1; 38 at PageID 336.)  She also sues Tipton County for negligent failure to protect her from Finney's conduct and negligent failure to prevent it.  (ECF No. 1.)  Shelton, the officer who initiated the traffic stop, has not been sued.  Finney and Tipton County seek summary judgment on all claims.  (ECF No. 32.)

## **LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)).  Facts in the record and reasonable inferences that can be drawn from those facts are to be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation modified).

Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record, or argue that the moving party is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A genuine issue for trial exists if the evidence would

---

[3] Ross again attempts to discount her deposition statements in response to Defendants' Motion, stating that the "aggressive questioning by opposing counsel" confused her.  (ECF No. 43-1 ¶ 76.)  However, her statements were made under oath.

permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Although the court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute[s] between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247–48 (emphasis in original). The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 251–52).

## ANALYSIS

Ross's claims against Finney and Tipton County are considered in turn.

### I.     Claims Against Finney

Ross alleges that Finney violated the Fourth Amendment's prohibition on unreasonable searches and seizures,[4] along with committing assault and battery under state law. (ECF No. 1 at PageID 6–7.) Defendants argue that Finney is entitled to summary judgment based on qualified immunity because Ross "has not proffered any case demonstrating it was clearly established . . .

---

[4] Although the words "excessive force" do not appear in Ross's complaint, in her response to Defendants' Motion to Exclude Expert Testimony, Ross contends that she included a Fourth Amendment excessive force claim. (ECF No. 38 at PageID 336.) She argues that "the factual content of Ms. Ross's allegations plainly lays out a Fourth Amendment claim for excessive force." (Id.) While Defendants are correct that there is no excessive force claim based on the Fourth Amendment in the complaint, the state law claims of assault and battery share the same analytical framework, and are considered below. However, to be clear, there is no claim for violation of § 1983 based on excessive force in this matter.

that a reasonable officer in Finney's shoes would have known any of his actions could violate [Ross's] rights." (ECF No. 46 at PageID 533.)

Officials who perform discretionary functions, such as police officers acting in the line of duty, are generally entitled to qualified immunity from individual liability for civil damages unless they violate clearly established rights. Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982). Therefore, a government official is entitled to qualified immunity against federal and state civil claims when their conduct (1) does not violate statutory or constitutional rights (2) that are clearly established, which a reasonable official would have known. King v. Betts, 354 S. W.3d 691, 704–05 (Tenn. 2011) (quoting Harlow, 457 U.S. at 818). Courts may analyze these prongs in either order. Id. at 706. The "clearly established law" prong "should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 79 (2017). Instead, "the clearly established law must be 'particularized' to the facts of the case." Anderson v. Creighton, 483 U.S. 635, 640 (1987)). If either prong of the test is not met, then qualified immunity is appropriate as a defense. "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The two prongs of qualified immunity are addressed below.

A.   Violation of Rights

For the first prong (whether a defendant "violated statutory or constitutional rights"), Ross argues that qualified immunity does not apply to Finney's actions because he violated her Fourth Amendment rights against unreasonable search and unlawful seizure, along with committing assault and battery under state law.

7

### 1. Fourth Amendment Seizure[5]

Defendants argue that it was not Finney but Shelton who made the original traffic stop, and thus Finney himself violated no rights in the stop of the vehicle. (ECF No. 32-2 at PageID 114.) Further, once Finney became involved, he had at least a reasonable suspicion that Tarrance was connected to the recent car break-ins and that he was likely to be armed, supporting his decision to require Ross and Tarrance to step out of the vehicle. (Id. at PageID 117.) In response, Ross argues that Finney's exit order was an unreasonable seizure. (ECF No. 43 at PageID 410.) She contends that he had an improper purpose for ordering her to step out of the car, "not for general officer-safety concerns—so he could see her hands and the like—but in order to conduct a search for which he lacked probable cause." (Id.)

A seizure occurs under the Fourth Amendment when, "under the totality of the circumstances, a reasonable person would have believed that he or she was not free to walk away." Brown v. Lewis, 779 F.3d 401, 412 (6th Cir. 2015) (quoting United States v. Alston, 375 F.3d 408, 411 (6th Cir. 2004)). "An officer may detain an individual for a short time for investigatory purposes if, under the totality of the circumstances, he has 'reasonable suspicion,' that is, 'a particularized and objective basis for suspecting the particular person . . . of criminal activity based on specific and articulable facts.'" Id. (quoting Hoover v. Walsh, 682 F.3d 481, 494 (6th Cir. 2012)). "If 'the length and manner' of the stop, including any force used, are not 'reasonably related to the basis for the initial intrusion,' then the stop ripens into an arrest, for which the officers must show probable cause." Id. (quoting Houston v. Clark Cnty. Sheriff Deputy John Does 1–5, 174 F.3d 809, 814 (6th Cir. 1999)). A warrantless arrest is reasonable if

---

[5] Ross's complaint lumps "unreasonable search and seizure" into one count, but her response to Defendants' summary judgment motion separates "wrongful seizure" from "unlawful search," and this Order does the same.

an officer "has probable cause to believe that the suspect committed a crime in the officer's presence," Dist. of Columbia v. Wesby, 583 U.S. 48, 56 (2018), even if the crime was "very minor," Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).

Here, Defendants are correct that it was not Finney who made the original stop for investigatory purposes, but Shelton. Because the liability of a defendant under § 1983 can only arise from that defendant's own conduct, Batson v. Hoover, 355 F. Supp. 3d 604, 611 (E.D. Mich. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)), Finney could not have violated any right in the original investigatory stop.

Nor did Finney violate any right when he ordered Ross to exit the vehicle. Based on what Shelton had told him,[6] and based on his observation of the single-strap backpack in the car, Finney had a reasonable suspicion that Tarrance was involved in the recent break-ins, and thus lawfully asked the couple to step out. When Ross refused, he then had probable cause to arrest her for disobeying a police order. See Tenn. Code Ann. § 55-8-104. Ross's argument about Finney's ill intent does not impact the analysis. See Nieves v. Bartlett, 587 U.S. 391, 403 (2019) ("In the Fourth Amendment context, however, 'we have almost uniformly rejected invitations to probe subjective intent.'" (quoting al-Kidd, 563 U.S. at 737)).

Thus, Finney did not commit an unlawful seizure. He is entitled to qualified immunity on the question of any seizure that occurred when he ordered Ross to exit her vehicle.

### 2. Fourth Amendment Search

In general, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a

---

[6] While Shelton told Finney that he smelled marijuana in the car, in addition to the information about a possible connection to the thefts in the neighborhood, the Court does not base its conclusion as to the lawfulness of the seizure on the smell of drugs, which is contested.

9

few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). The motor-vehicle exception authorizes warrantless searches of vehicles when supported by probable cause. See generally Carroll v. United States, 267 U.S. 132 (1925). The officer executing the search must have "probable cause to believe that the vehicle contains evidence of a crime." Taylor v. City of Saginaw, 922 F.3d 328, 334 (6th Cir. 2019) (quoting United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007)). If supported by a reasonable suspicion, an officer may conduct a limited search of the vehicle's interior if the officer has a specific, articulable, and reasonable basis to believe "the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049 (1981) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). The question is a "commonsense" and "practical" one "to be judged from the totality of the circumstances." United States v. Haynes, 301 F.3d 669, 678 (6th Cir. 2002) (citation modified) (quoting United States v. Wright, 16 F.3d 1429, 1437 (6th Cir. 1994)).

Here, Finney contends that he smelled marijuana, the presence of which would establish probable cause to search the backpack. Despite that contention—which appears reasonable, given that more than one person had smoked CBD in Ross's car in the general timeframe of the stop, if not in the days immediately preceding—the question of the odor of marijuana is disputed, and thus must be left for a jury to determine.

The only remaining evidence of crime that Finney could reasonably believe would be found in the backpack is the evidence of a weapon taken from the recent break-ins. While Finney arguably had reasonable suspicion to believe evidence of a crime was in the bag, the totality of the circumstances on this point would not support probable cause. Therefore, a warrantless search could only be justified if "the suspect is dangerous and the suspect may gain

10

immediate control of weapons." Long, 463 U.S. at 1049. However, since Ross and Tarrance were already handcuffed at the time of the search, Finney cannot have believed that they might "gain immediate control of weapons" in the backpack. After all, once a suspect has been detained, an officer may only search for evidence of the crime of arrest, Gant, 556 U.S. at 351, and the crime of arrest here was a failure to obey a police order. Examining the totality of the circumstances, a reasonable suspicion of the presence of weapons did not justify a warrantless search of the backpack, given the dispute of fact as to the smell of marijuana.

Thus, a reasonable factfinder could find that Finney violated the Fourth Amendment by searching Ross's backpack after she and Tarrance had been handcuffed. If Ross demonstrates under the second prong of qualified immunity that a reasonable officer would have known that this conduct violated her rights, then Finney will not be entitled to qualified immunity on the question of the search of the backpack.

### 3. State Law Assault and Battery

Objective reasonableness under a totality of the circumstances is the "touchstone" of the excessive-force analysis. Barnes v. Felix, 605 U.S. 73, 79 (2025) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). A claim turns on whether "the force deployed was justified from the perspective of a reasonable officer on the scene, taking due account of both the personal interests and the governmental interests at stake." Id. (citation modified) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). The arresting officer's "underlying intent or motivation" does not matter with respect to the reasonableness of the force. Graham, 490 U.S. at 396. In practice, the "proper application" of the objective-reasonableness inquiry calls for "careful attention to the facts and circumstances of each particular case," giving close attention to the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

11

officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." St. John v. Hickey, 411 F.3d 762, 771 (6th Cir. 2005) (quoting Graham, 490 U.S. at 396). To determine whether a law enforcement officer has committed assault or battery, Tennessee courts consider whether the officer's alleged use of force violated the Fourth Amendment. Stafford v. Jackson Cnty., No. M201601883COAR3CV, 2017 WL 3332268, at *4 (Tenn. Ct. App. Aug. 4, 2017). Qualified immunity under Tennessee law is coextensive with qualified immunity under federal law. Willis v. Neal, No. 1:04-CV-305, 2006 WL 1129388, at *2 (E.D. Tenn. Apr. 24, 2006).

     Here, because Ross was actively resisting Finney's orders to step out of the car, refusing even to unbuckle her seatbelt, it appears reasonable that Finney would unbuckle her and remove her from the car. It even seems likely, judging from two partially obscured and grainy videos, that his removal of Ross from the car to the ground was reasonable, given that Ross appears to have retracted her legs, refusing to support her own weight during the removal. However, because the difficult-to-assess video footage does not foreclose the possibility that a reasonable jury could find that Finney "slammed [Ross]" and then "placed his knee into her back" and "press[ed] [her] into the asphalt" (ECF No. 43-1 ¶¶ 59, 61), the question whether Finney committed state law assault and battery must ultimately be a question for the jury.

     Ross's cell phone video shows that, when Finney reached in to remove her, she raised her legs up off the floor. When Finney pulled her out of the car, both Finney and Ross hit the ground, as seen on security video taken from a house down the road. A reasonable factfinder could call this a reasonable removal and not a "slam," given that Ross was not using her legs, but it is also possible that a reasonable jury could disagree. Next, when Finney places Ross's hands behind her back on the ground, it appears that he straddled her while supporting himself with his

knee and foot on the pavement, without putting his full weight on Ross.  (ECF No. 32-4 at PageID 166:18–167:16.)  Thus, to the extent he "placed his knee into her back" and "pressed her into the ground," the factfinder could decide that this force was no more than what was required to effect the arrest.  See Goodrich v. Everett, 193 F. App'x 551, 556 (6th Cir. 2006) ("Taking the evidence in the light most favorable to Goodrich, the kneeing and kicking occurred not when Goodrich was neutralized, but while the officers were handcuffing him.").  But, again, weighing the evidence belongs to the jury.

Thus, as long as Ross can demonstrate under the second prong that her right to be free of an assault and battery is clearly established in these circumstances, Finney is not entitled to qualified immunity on the claim of assault and battery under Tennessee law.

B.      Clearly Established

As for the second qualified immunity prong ("clearly established"), Ross cites several cases which, she argues, establish that the rights Finney violated were clearly established.  Because "the clearly established law must be 'particularized' to the facts of the case," Anderson, 483 U.S. at 640, only two of these cases clearly establish a right that applies to the particular facts of this case.

First, Ross cites Arizona v. Gant, 556 U.S. 332 (2009), contending that, if the jury doubts that Finney ever smelled marijuana (or something like it), then Finney's search of her backpack would be unlawful, since there could be no evidence of the crime of arrest (failure to follow an officer's command) inside the backpack.  (ECF No. 43 at PageID 412.)  Gant teaches that a post-arrest search of a vehicle, after the vehicle's occupants have been secured, can only seek the evidence of the particular crime of arrest.  556 U.S. at 351.  Here, Ross reasons, because Finney did not smell marijuana, there was no evidence for which to lawfully search.  (Id.)  Although it

13

appears quite possible that Finney smelled the residue of CBD, which had been smoked in the car in that general timeframe, this is a question for the jury. Thus, depending on the jury's determination of the disputed material fact, Finney could have violated the clearly established right against an unlawful search under facts sufficiently similar to this case.

Second, in Smith v. City of Troy, 874 F.3d 938 (6th Cir. 2017), Ross finds a clearly established right to be free from an officer's "throwing a suspect to the ground for only minimal or passive resistance." (ECF No 43 at PageID 412.) In Smith, an epileptic plaintiff who gripped a fence while suffering a seizure did not release the fence and walk away when directed by an officer, who then kicked his legs out from under him and landed on top of him. 874 F.3d 938, 942. In that case, there was "little in the record to suggest that Smith committed any crime, even a minor one." Id. at 945. And yet, from the perspective of a reasonable officer under the circumstances, there was reasonable suspicion that a crime was being committed. A neighbor called the police on Smith to report "suspicious activity," Smith did not respond to the officer's repeated direction to walk away, the officer thought that Smith was "under the influence of something" because he was swaying and sweating in the cold air, and Smith pulled his arm away from the officer's grasp. Id. at 942. Here, like in Smith, Finney had reason to believe that Ross's resistance was related to criminal activity, and decided to accelerate the encounter to a take-down. There is sufficient factual similarity to put Finney on notice that using too much force would violate Ross's right to be free from state law assault and battery under these facts.

The other cases Ross cites, however, are not on point. In Brown v. Lewis, 779 F.3d 401 (6th Cir. 2015), Brown immediately complied with the officers' request to exit the car, yet was still thrown to the ground. 779 F.3d at 418. Given Ross's refusal to exit the car and active resistance against it, the Brown facts do not fit this case.

14

In Hinchman v. Moore, 312 F.3d 198 (6th Cir. 2002) the Sixth Circuit ultimately found a violation of rights based on a conclusion that the officers falsified the support for probable cause. 312 F.3d at 205–06.  Here, it is up to the jury to decide whether they believe Finney's contention that he smelled marijuana.  If they do not believe Finney, the smell will not be considered as a basis for any actions taken by Finney.  However, if the jury decides that it was reasonable for Finney to conclude that he did smell marijuana, that conclusion could support his actions.  See United States v. $275,000 in U.S. Currency, No. 1:07-0058, 2009 WL 1588661, at *10 (M.D. Tenn. June 5, 2009) (finding probable cause to search a vehicle due to officer's "reasonable belief—albeit ultimately wrong—that he had smelled marijuana"); see also United States v. Brown, No. 3:19-CR-191-TAV-HBG, 2021 WL 6545270, at *13 (E.D. Tenn. Dec. 22, 2021), report and recommendation adopted, No. 3:19-CR-191-TAV-HBG, 2022 WL 164534 (E.D. Tenn. Jan. 18, 2022), aff'd, No. 23-5983, 2024 WL 4554674 (6th Cir. Oct. 23, 2024) (noting that the smell of marijuana established probable cause to search a vehicle).  In essence, the Court's ruling here is in keeping with the Hinchman lessons, but the case does not directly add to "clearly established."

Other cases cited by Ross are likewise inapposite.  See Dorsey v. Barber, 517 F.3d 389, 398–99 (6th Cir. 2008) (extended detention at gunpoint); Humphrey v. Mabry, 482 F.3d 840, 846–48 (6th Cir. 2007) (forcibly removing driver at gunpoint); Smoak v. Hall, 460 F.3d 768 (6th Cir. 2006) (ordering family to knees at gunpoint and killing family dog).  These cases do not establish that a reasonable officer would know that he was committing either an unlawful seizure or state law assault and battery.

Thus, Ross has met her burden to show a clearly established right to be free from an unreasonable search and to be free from assault and battery at the hands of police under these

15

facts. Finney is not entitled to qualified immunity as to an unlawful search and state law assault and battery. But Ross has failed to meet her burden as to the unlawful seizure. Thus, Finney is entitled to qualified immunity on that claim only.

Therefore, Defendants' Motion for Summary Judgment on Ross's unlawful seizure claim against Finney is **GRANTED**, based on qualified immunity. The Motion is **DENIED** as to the Fourth Amendment unlawful search claim and the state law claim for assault and battery.

## II.    Claims Against Tipton County

Ross also sues Tipton County for negligent failure to protect and prevent. (ECF No. 1 at PageID 6–7.) She argues that "Finney would not have acted in the tortious manner that he did but for certain negligent acts or omissions" of the County, and that "[o]ne or more other Sheriff's Deputies" negligently failed to intervene on her behalf during the incident. (Id. at PageID 7.) Defendants seek summary judgment on this claim, arguing that Ross, in her response to the summary judgment motion, included "no argument regarding her claims against Tipton County." (ECF No. 46 at PageID 534.) According to Defendant, the claims against Tipton County, therefore, "have been abandoned and should be dismissed." (Id.)

"[A] non-moving party waives an argument by failing to address the argument in [her] response brief." Porter v. Louisville/Jefferson Cnty. Metro Gov't, No. 3:12-CV-00829-CRS, 2017 WL 3485062, at *3 (W.D. Ky. Aug. 14, 2017); see also Hicks v. Concorde Career Coll., 449 Fed. Appx. 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in . . . his response to the summary judgment motion.").

Defendants are correct that Ross does not mention Tipton County in her response to the summary judgment motion. Thus, she has abandoned her claims against Tipton County.

16

Therefore, Defendants' Motion for Summary Judgment as to Ross's claims against Tipton County is **GRANTED**.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED** as to Ross's claims against Finney for violations of the Fourth Amendment prohibition on unlawful seizures, and as to Ross's claims against Tipton County. The Motion is **DENIED** as to Ross's claim against Finney for a violation of the Fourth Amendment prohibition on unlawful searches, and for assault and battery under state law.

**IT IS SO ORDERED,** this 23rd day of October, 2025.

                                                    s/ Sheryl H. Lipman
                                                    SHERYL H. LIPMAN
                                                    CHIEF UNITED STATES DISTRICT JUDGE