IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHELBY ROSS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 2:24-cv-02313-SHL-cgc |
| TIPTON COUNTY, TENNESSEE, and JEREMY FINNEY, | ) ) ) |
| Defendants. | ) ) |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S PROPOSED EXPERT ROY G. TAYLOR**

Before the Court is Defendant's Motion to Exclude Plaintiff's Proposed Expert Roy G. Taylor, filed July 18, 2025. (ECF No. 33.) Defendants Tipton County, Tennessee, and Jeremy Finney[1] seek to exclude Plaintiff Shelby Ross's expert witness, Dr. Roy G. Taylor. (Id. at PageID 288.) Ross responded in opposition three weeks later. (ECF No. 38.)

Taylor is a former law enforcement officer and current adjunct professor with over forty years of experience "in various federal, state, local, and private Police Chief positions." (ECF No. 38-1 at PageID 349.) His areas of expertise include nationwide police procedures around traffic stops, use of force, and de-escalation techniques. (ECF No. 38 at PageID 338.)

For the reasons given below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant Tipton County has since been granted summary judgments as to all of Ross's claims against it. (ECF No. 51.) Finney remains as the sole defendant in this case.

## BACKGROUND

On May 11, 2023, Tipton County Sheriff's Officers Brandon Shelton and Jeremy Finney canvassed the neighborhood in which Ross lived with her boyfriend, Justin Tarrance, after a series of vehicle break-ins and gun thefts in the area. (ECF Nos. 32-1 ¶¶ 1, 3; 43-1 ¶ 1, 3.) The officers were aware that, two days earlier, a hooded figure had been spotted on home video surveillance peering into car windows while wearing a single-strap backpack. (ECF Nos. 32-1 ¶ 2; 43-1 ¶ 2.) They also knew that an unknown person had fired a weapon during a burglary two days before. (ECF Nos. 32-1 ¶ 4; 43-1 ¶ 4.)

Shelton was interviewing neighbors about the break-ins, when Ross and Terrance walked out of their home. (ECF No. 43-1 ¶ 11.) The neighbors promptly pointed out the couple to Shelton, suggesting that they might be involved with drugs. (Id.) Shelton also thought Tarrance resembled the burglary suspect captured on the video. (ECF Nos. 32-1 ¶ 12; 43-1 ¶ 12.) When Ross and Tarrance drove away, Shelton followed them, at the same time calling Finney for backup. (ECF No. 32-1 ¶¶ 13–14; ECF No. 43-1 ¶¶ 13–14.) Ross and Tarrance did not drive out of the neighborhood, but instead made a circle around the block, turning back toward their house while Shelton followed. (ECF Nos. 32-1 ¶ 15; 43-1 ¶ 15.)

Shelton pulled them over. (ECF Nos. 32-1 ¶ 16; 43-1 ¶ 16.) Finney arrived thereafter and heard from Shelton the reasons for the stop—including that a neighbor had told Shelton that they believed the couple could be involved in drugs, and, after the stop, that Shelton smelled marijuana coming from their car. (ECF Nos. 32-1 ¶¶ 24–25; 43-1 ¶ 24.) Ross, however, disputes that anyone smelled marijuana. (ECF No. 43-1 ¶ 25.) Finney then approached the couple's vehicle. (ECF Nos. 32-1 ¶ 27; 43-1 ¶ 27.) He observed a single-strap backpack inside. (ECF Nos. 32-1 ¶ 30; 43-1 ¶ 30.) Because the suspect in the break-ins had also worn a single-strap

backpack during one of the break-ins and because the suspect had stolen guns from vehicles, "Finney believed there could be a gun in the vehicle or in the bag." (ECF Nos. 32-1 ¶ 31; 43-1 ¶ 31.)

Defendants contend that "Finney smelled marijuana emanating from [Ross's] vehicle," which Ross disputes "because she had not used marijuana in years." (ECF Nos. 32-1 ¶ 29; 43-1 ¶ 29.) Ross later conceded, however, that she and Tarrance smoked CBD, had used CBD in her car, and had used CBD during the timeframe of—although not immediately preceding—the stop. (ECF Nos. 32-1 ¶¶ 70–71; 43-1 ¶¶ 70–71; 32-4 at PageID 157:25–158:1.) At the time of the stop, Finney asked whether the couple had been smoking "weed," after which Ross hesitated before saying "no." (ECF Nos. 32-1 ¶ 41; 43-1 ¶ 41.) Finney told them that he smelled weed coming from their vehicle, and that he had probable cause to search it. (ECF Nos. 32-1 ¶¶ 42–43; 43-1 ¶¶ 42–43.)

Opening Ross's door, Finney instructed her to step out of the vehicle, but she did not. (ECF Nos. 32-1 ¶¶ 45, 47; 43-1 ¶¶ 45, 47.) He warned her that she would be taken into custody if she did not step out of the car. (ECF Nos. 32-1 ¶ 48; 43-1 ¶ 48.) He repeated the command a total of six times over twenty-three seconds. (ECF Nos. 32-1 ¶ 49; 43-1 ¶ 49; 43-2 ¶ 10; 46 at PageID 532.) As he reached into the car to remove her, Ross raised her legs and placed them against the dashboard in what Defendants describe as an attempt "to brace herself from being removed" but what Ross calls a "reflex." (ECF Nos. 32-1 ¶ 54; 43-1 ¶ 54.) Finney reached into the vehicle to take hold of Ross's wrist, but Ross pulled away from him. (ECF Nos. 32-1 ¶ 57; 43-1 ¶ 57.) Finney then reached over Ross to unbuckle her seatbelt and removed her from the vehicle as she pushed her legs upward against the steering wheel. (ECF Nos. 32-1 ¶¶ 52, 58;

3

43-1 ¶¶ 52, 58.) Throughout the time that Ross was refusing to exit the car and reacting to Finney's attempt to remove her, Ross was also screaming at him.

As Finney pulled Ross out of the car, they both "went to the ground"; Ross further asserts, and Defendants dispute, that "[h]e slammed her" and then "placed his knee into her back" and "press[ed] [her] into the asphalt." (ECF Nos. 32-1 ¶ 59; 43-1 ¶¶ 59, 61.) Ross concedes, however, that Finney did not place his full weight on her. (ECF Nos. 32-1 ¶ 61; 43-1 ¶ 61.) Finney placed Ross's hands behind her back. (ECF No. 32-1 ¶ 62.) As a result of the encounter, Ross received bruises and cuts, in addition to, according to Ross, "psychological trauma and anxiety." (ECF Nos. 32-1 ¶ 64; 43-1 ¶ 64.)

After more officers arrived, and while Ross and Tarrance were standing handcuffed in front of their car, the officers searched Ross's vehicle, finding only a CBD honey stick, according to Defendants, or an empty CBD honey stick wrapper, according to Ross. (ECF Nos. 32-1 ¶¶ 67, 69; 43-1 ¶¶ 67, 69.) Afterward, the couple was released, and Ross was not charged with any crime. (ECF No. 32-1 ¶ 81; 43-1 ¶ 81.)

At her deposition, Ross explained that both she and Tarrance do smoke CBD products, and that they "have, on rare[] occasion, used CBD products in her car," although "not in the days leading up to or on May 11, 2023." (ECF Nos. 32-1 ¶¶ 70–71; 43-1 ¶¶ 70–71.) She further testified that CBD "could" smell like marijuana, and that—although the odors are not identical—she "could see where one may be confused." (ECF No. 43-1 ¶ 75.)

Ross sues Finney, alleging Fourth Amendment violations based on an illegal search and seizure, in addition to state law assault and battery.[2] (ECF Nos. 1; 38 at PageID 336.) Ross

---

[2] Finney has been granted summary judgment on Ross's illegal seizure claim. Ross's two remaining claims are for a violation of the Fourth Amendment prohibition on illegal searches and for state law assault and battery. (ECF No. 51 at PageID 579.)

4

hired Taylor as an expert witness in areas such as police use-of-force policies, de-escalation techniques, and traffic stops. (ECF No. 38 at PageID 338.)

In his Initial Report, Taylor describes his qualifications, methodology, and opinions on the police conduct in this case. (ECF No. 33-2.) Among his seventeen statements of opinion are the following:

- "Law enforcement officers are instructed in their basic law enforcement training on the use of force,"
- the officers here had "no probable cause to suspect Ms. Ross had committed a crime,"
- there was "no evidence that Ms. Ross or Mr. Tarrance posed any threat to officer safety,"
- Finney did not give Ross "adequate time to comply" with his orders,
- "The Chattanooga Police Department's Use of Force policy outlines a continuum of resistance types" that "help officers assess situations and apply force proportionally,"
- the officers pulled Ross over "because the vehicle circled the block, which is not unlawful or uncommon behavior,"
- Finney and Shelton searched Ross's vehicle "without a warrant, exigent circumstances, or consent to search,"
- "the investigative rationale based on vague community tips and generalizations about drug activity is not consistent with professional law enforcement standards," and
- Finney "failed to comply with accepted law enforcement practices by stopping, handcuffing, and detaining Ms. Ross and Mr. Tarrance without having articulable reasonable suspicion."

(Id. at PageID 309–12.)

Later, Taylor submitted a Supplemental Report, after receiving the report of Defendants' expert, Dr. John J. Ryan (the "Ryan Report"), and a copy of Tipton County's police policies. (ECF No. 33-3.) This "supplemental and rebuttal report" focuses on Finney's failure to adhere to local police policies. Taylor's five opinions in that report are:

1. Investigator Finney failed to adhere to Tipton County's Use of Force Policy requiring verbal warnings and allowing time for compliance before escalating to physical force.

5

2. The behavior of Ms. Ross, as captured on video and corroborated by her deposition, did not meet the threshold of active resistance required to justify any level of force beyond verbal commands.
3. The force used against Ms. Ross was not consistent with Department policies when judged under the totality of the circumstances, as no immediate threat or flight risk was presented.
4. Investigator Finney did not follow established de-escalation practices and failed to exhaust alternatives prior to resorting to force.
5. The conclusions presented in the Ryan Report overlook key provisions in Tipton County's policies, which emphasize the necessity of time for compliance and de-escalation.

(Id. at PageID 315–16.) Defendants seek to exclude Taylor as an expert witness. (ECF No. 33.)

## ANALYSIS

Defendants broadly argue that Taylor should be excluded as an expert because (1) his methods are not reliable under *Daubert* and (2) his report includes inadmissible legal conclusions about whether Finney had probable cause and reasonable suspicion to support his actions. (ECF No 33-1 at PageID 294–98.) In the alternative, Defendants seek to exclude Taylor's Supplemental Report because it does not "supplement" any inaccurate or incomplete opinions from his Initial Report, but rather adds new opinions that were available to him earlier, and also because the Supplemental Report's analysis of Tipton County's Use of Force Policy will not assist the trier of fact because "there is no constitutional claim before this Court based on Tipton County's policies, nor is there any excessive force claim being asserted in this lawsuit." (Id. at PageID 298–301.) Each of these arguments are considered below.

I. **Applicable Law**

The Federal Rules of Evidence require that an expert witness be specially qualified before he can give opinion testimony in a case:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

6

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under federal law,

> a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." Third, the testimony must be reliable.

In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008) (quoting Fed. R. Evid. 702); accord United States v. Rios, 830 F.3d 403, 413 (6th Cir. 2016), reh'g en banc denied. Once a party challenges the admissibility of proposed expert testimony, the proponent bears the burden of establishing, by a preponderance of the evidence, that it is admissible. Fed. R. Evid. 702 advisory committee's note to the 2000 amendments (citing Bourjaily v. United States, 483 U.S. 171 (1987)); EEOC v. Kaplan Higher Educ. Corp., 748 F.3d 479, 752 (6th Cir. 2014) (citing Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001)).

Federal district courts have broad discretion to exclude proposed expert testimony. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 139 (1997); accord Lovelace v. Pediatric Anesthesiologists, P.A., No. 2:13-cv-02289-SHL-dkv, 2014 WL 8136184, at *1 (W.D. Tenn. Nov. 14, 2014). But "rejection of expert testimony is the exception, rather than the rule." In re Scrap Metal, 527 F.3d at 530 (quoting Fed. R. Evid. 702 advisory committee's note to the 2000 amendments).

7

**II.     Reliability**

Defendants first argue that, under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993), Taylor "does not reliably employ principles and methods to base his conclusions." (ECF No. 33-1 at PageID 294.)  Daubert's factors ask "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." (Id. at PageID 294–295 (quoting Daubert, 509 U.S. at 593–94)).  Taylor's opinions do not satisfy these factors, according to Defendants, because Taylor "generally relies upon his experience, education, and training in law enforcement." (Id. at PageID 295.)

However, it is unclear what additional methodology Defendants would ask a police procedure expert to possess.  After all, the methods of an expert in police procedure are not the kinds of methods that are regularly tested, peer reviewed, or accepted by the scientific community.  As Ross points out, "Daubert is only of limited help in assessing technical or experiential expertise." (ECF No. 38 at PageID 338 (quoting First Tennessee Bank Nat. Ass'n v. Barreto, 268 F.3d 319, 334 (6th Cir. 2001).)  Instead, for nonscientific expertise such as Taylor's, "the relevant reliability concerns may focus on personal knowledge or experience." Barreto, 268 F.3d at 335.

Taylor's qualifications include forty years of law enforcement and police training experience.  Although his opinions fall outside the realm of science, his personal knowledge and experience are appropriate substitutes to support a finding of reliability.  Defendants will have a chance to challenge Taylor's opinion through cross-examination and presentation of contrary evidence at trial, but exclusion is not the right path.

8

Thus, Defendants' Motion is **DENIED** to the extent they seek to exclude Taylor's opinion testimony as unreliable.

### III.     Inadmissible Legal Conclusions

Defendants next assert that Taylor opines in his Initial Report about whether Finney or Shelton had probable cause or reasonable suspicion to engage in certain actions on May 11, 2023.  They point to a case out of the Eastern District of Tennessee in which a motion to exclude Taylor's testimony was granted in part, only to the extent that Taylor would attempt to render an opinion on the legal question of whether an officer's conduct "amounted to excessive force." Pheap v. Williams, No. 320CV00387DCLCDCP, 2023 WL 5984363, at *13 (E.D. Tenn. Aug. 31, 2023).  However, in Pheap, the motion to exclude the rest of Taylor's expert testimony, outside of the impermissible legal conclusions, was denied. Id. at *19.  For her part, Ross concedes that some of the opinions in Taylor's report "cross the line into ultimate questions of fact."  (ECF No. 38 at PageID 345.)  Ross acknowledges that, to the extent Taylor uses "phrases like 'objectively unreasonable' as a shorthand for something like 'consistent with national standards,' he should be required to use more precise language at trial." Id. at 345.

Both Parties are correct that an expert witness "may not testify to a legal conclusion" or "define legal terms."  Hyland v. HomeServices of Am., Inc., 771 F.3d 310, 322 (6th Cir. 2014). Taylor cannot offer legal conclusions on questions including, but not limited to, reasonable suspicion, probable cause, whether conduct was lawful or unlawful, whether exigent circumstances existed, or whether a use of force constituted assault and battery.  However, he may offer his opinions that do not include these terms and conclusions.

Thus, Defendants' Motion is **GRANTED** as to the exclusion of Taylor's opinions on questions of law.

IV.     **Supplemental Report**

After Taylor submitted his Initial Report (ECF No. 33-2), and after he received the report of Defendants' expert, Dr. John J. Ryan, along with a copy of Tipton County's police policies, Taylor submitted the Supplemental Report (ECF No. 33-3). Defendants argue that, "at a minimum," this Supplemental Report should be excluded because Taylor failed to include in his Initial Report "a complete statement of all opinions the witness will express and the basis and reasons for them." (ECF No. 33-1 at PageID 298 (emphasis in original) (quoting Fed. R. Civ. P. 26(a)(2)(B)(1)).) Instead, according to Defendants, Taylor later issued a Supplemental Report merely "as an attempt to bolster former opinions, provide totally new opinions, or combat the opinions of Defendants' expert." (Id. at PageID 300.) Defendants further argue that Taylor's analysis of the Tipton County police policies is irrelevant to this case, since there is no constitutional claim based on those policies nor any excessive force claim. (Id. at 301.)

Ross responds that "it hardly makes sense" for Defendants to fault Taylor for not including all of his opinions in the Initial Report, when "Defendants had not yet produced a copy of the [Tipton County] Policies—which Ms. Ross had requested—by the initial-disclosure Deadline." (ECF No. 38 at PageID 346.) Because Taylor did not receive the police policies until after the Initial Report was written, he had a valid reason to supplement his earlier opinions. (Id.) Ross further argues that the Tipton County use-of-force policies are still relevant to this case. (Id. (citing Mullins v. Cyranek, 805 F.3d 760, 768 (6th Cir. 2015) ("Whether or not an officer is following police procedures is certainly relevant to the question of reasonableness in excessive force cases.")).)

Taylor's use-of-force analysis, drawn from the Tipton County police policies, appears relevant to this case, even though no Fourth Amendment excessive force claim is at issue,

10

because the analysis of the state law assault and battery claim mirrors that of an excessive force claim.  See Stafford v. Jackson Cnty., No. M201601883COAR3CV, 2017 WL 3332268, at *4 (Tenn. Ct. App. Aug. 4, 2017) (explaining that Tennessee courts employ a Fourth Amendment analysis to determine whether a law enforcement officer has committed assault or battery).  Further, it appears permissible under Rule 26 that Taylor should submit a Supplemental Report because he had no access to the Tipton County policies previously.

Thus, to the extent Defendants seek to exclude Taylor's Supplemental Report, their Motion is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Exclude Plaintiff's Proposed Expert Roy G. Taylor is **GRANTED IN PART** and **DENIED IN PART**.  It is **DENIED** as to his reliability as an expert and as to the contents of his Supplemental Report.  The Motion is **GRANTED** as to the exclusion of any legal conclusion Taylor's reports or testimony might contain.

**IT IS SO ORDERED,** this 28th day of October, 2025.

> s/ Sheryl H. Lipman
> SHERYL H. LIPMAN
> CHIEF UNITED STATES DISTRICT JUDGE